933 A.2d 1 (2007)
396 N.J. Super. 91
STATE of New Jersey, Plaintiff-Respondent,
v.
Jeffrey BENDIX, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued August 7, 2007.
Decided August 14, 2007.
George Daggett argued the cause for appellant (Daggett, Kraemer, Eliades, Kovach & Ursin, attorneys; Gary A. Kraemer, Sparta, on the brief).
Thomas J. Reed, Assistant Prosecutor, argued the cause for respondent (David J. Weaver, Sussex County Prosecutor, attorney; Mr. Reed, of counsel and on the brief).
Before Judges S.L. REISNER and LYONS.
The opinion of the Court was delivered by
S.L. REISNER, J.A.D.
Defendant Jeffrey Bendix pled guilty to two disorderly persons offenses, possession of drug paraphernalia, N.J.S.A. *2 2C:36-2, and failure to turn over a controlled dangerous substance, N.J.S.A. 2C:35-10b. The only portion of his sentence at issue on this appeal is a six-month suspension of his driving privileges.

I
Pursuant to a plea agreement, defendant admitted that on April 24, 2005, he had ingested some cocaine in the bathroom of his gas station, he possessed trace amounts of cocaine in three little baggies which he failed to turn over to the police when they arrived, and he possessed "drug paraphernalia" in the form of the wrappers holding the cocaine and a credit card from which he was ingesting the drug. Defendant had no prior criminal history, beyond a conditional discharge in 1994, and he had a clean driving record since at least 2000. Defendant's possible license suspension was referenced in the plea agreement as "to be discussed." At the plea hearing defense counsel indicated that this notation was due to "the new statute" on the suspension issue, referring to the hardship exception set forth in N.J.S.A. 2C:35-16, adopted in 2006.
At the plea hearing on June 29, 2006, defense counsel elicited no formal testimony from his client concerning the need to retain his driving privileges. However, defendant was sworn and, in the course of the hearing, he did provide some testimony to the judge concerning his circumstances. Initially defense counsel made a series of representations to the judge about his client's need to keep his license in order to run his garage business. Defendant candidly corrected one of his counsel's representations concerning defendant's alleged need to drive garage customers home because the garage did not have "loaner car[s]." However, he confirmed his counsel's representation that losing his license would affect defendant's business. Defendant himself told the judge that his business would be affected by the loss of his license, because "[y]ou can't become a State inspector unless you're a licensed New Jersey driver" and he explained that both of the employees whom he had trained to do the inspections, in anticipation of possibly losing his license, had become disabled or had quit. After considering defendant's situation, and acknowledging the hardships that loss of driving privileges generally posed in rural Sussex County, the judge postponed sentencing to give defendant more time to adjust his business to accommodate the possible loss of his license, and to further consider whether the statutory amendment should apply retroactively.
At a second hearing on August 4, 2006, defendant indicated that he lived fifteen miles from his garage business. At this hearing defendant also stated that he needed to be able to road test the cars that he or his mechanics had repaired. He indicated that his business reputation in the community was based on his personal expertise in repairing cars and that road testing the cars himself was part of the service.
At the initial hearing, the trial judge expressed great concern that if he gave defendant a hardship exception because of the difficulty of getting to work without a car in rural Sussex County, he would have to grant an exception to many other defendants. In later denying the application, he noted that he would look at the matter differently if he believed that loss of driving privileges would cause defendant to lose his garage business. He reasoned that defendant could direct his employees to do any needed driving in the business. He admitted that "[defendant's situation] is different because of the owner/operator status" but indicated that he had "the sense that another licensed driver can do *3 much of what we're talking about." However, while the judge imposed the license suspension, he stayed the suspension pending appeal because "it's a close enough call, and its consequences can be serious. It could impact the business that employs a number of people." The judge did not directly address the legal issue as to whether the statute applied retroactively, but his decision assumed that it did.

II
On this appeal, defendant contends that the hardship exception in N.J.S.A. 2C:35-16 should be applied retroactively, and that the trial court erred in denying defendant the benefit of the exception. The statute, which mandates loss of driving privileges upon conviction of certain offenses including those involved in this case, was amended effective January 12, 2006, to provide that suspension shall be imposed
unless the court finds compelling circumstances warranting an exception. For the purposes of this section, compelling circumstances warranting an exception exist if the forfeiture of the person's right to operate a motor vehicle over the highways of this State will result in extreme hardship and alternative means of transportation are not available.
[N.J.S.A. 2C:35-16a]
While the State contended in the trial court that the statute should not apply retroactively, the State's appellate brief does not address the issue and we deem the State to have thus conceded the point. Moreover, since the legislation is clearly ameliorative in nature, retroactive application is appropriate. See Kendall v. Snedeker, 219 N.J.Super. 283, 286, 530 A.2d 334 (App.Div.1987).
Having reviewed the record, we conclude the trial judge took too restrictive a view of his discretion to grant a hardship exception. He first noted that in rural Sussex County, where public transportation is minimal or non-existent, many defendants might be able to invoke the hardship exception and that the exception might "swallow the rule." But it appears from the legislative history of the amendment, adopted in 2006, that lack of public transportation and its potential impact on defendants' employment was one of the problems the Legislature had in mind in creating the hardship exception. See Senate Judiciary Committee, Statement to Senate Bill No. 2517 (December 12, 2005) [adopted as N.J.S.A. 2C:35-16].[1] Consequently, we conclude the judge was unduly concerned with the potential number of defendants who might qualify for the exception.
Moreover, while the record was somewhat sparse we note defendant's testimony that he needed a driver's license to operate a state-licensed inspection facility and that he needed to road test vehicles as part of his job. The judge's discomfort with his determination to suspend defendant's license is evident from the record, *4 and may have stemmed from his recognition of the often-counterproductive consequences of license suspensions and a sense that his discretion was narrower than he would have wished. Our view of the amendment is that it was intended to address situations in which a defendant would lose employment or incur other "extreme hardship" by virtue of license suspension. Defendant, who had a clean driving record since at least 2000 and committed offenses not involving unsafe driving, may be a likely candidate for an exception, but only on a properly-created record.
In that connection, we also note with disapproval the informality with which defense counsel presented a large part of the application, placing representations on the record rather than presenting testimony from his client. In the interests of justice we conclude that the most appropriate disposition is to remand this matter to the trial court for a rehearing at which defendant's application for a hardship exception shall be presented through his testimony and any rebuttal shall likewise be presented through witness testimony rather than representations by the prosecutor. In deciding the matter, the trial court shall apply the principles we have articulated in this opinion concerning the hardship exception. The license suspension is vacated pending rehearing. We do not retain jurisdiction.
Remanded.
NOTES
[1] The original statutory provision requiring license suspension stemmed from a federal law, 23 U.S.C.A. § 159, which conditioned states' receipt of certain federal funds on adoption of legislation mandating license suspension for drug offenders. The 2006 amendment corresponded to a provision of the federal law allowing states to create a hardship exception. See ibid. In comments supporting the legislation, the New Jersey Commission to Review Criminal Sentencing noted the counterproductive impact of license suspension on efforts to rehabilitate drug offenders and reported that the bill also had the overwhelming support of the New Jersey Association of County Prosecutors. Letter from Hon. Barnett E. Hoffman, Chair, New Jersey Commission to Review Criminal Sentencing, to Senator John H. Adler (Apr. 12, 2005).